Thank you. Good morning. May it please the Court, my name is Richard Wall. I am here on behalf of the defendant in this matter, Mr. Rodney Fisher. Would you please speak up a little bit more? Okay. Sorry. I would like to reserve two minutes for rebuttal. You may do so. I think it's important to keep in mind in this case that even though this incident with the entry, challenged entry, took place at a hotel or a motel, it's very clear under the law that for purposes of Fourth Amendment analysis, it's the same thing as a person's home. So this was an entry into someone's home, and this was an entry at 5 o'clock in the morning, in the middle of the night, into a person's home. The government's version of the events is that they knock on the door and a woman, completely naked, without a stitch of clothing. Now, hold on. As I understand it, it was the manager of the hotel that knocked on the door. Am I wrong? And isn't that significant? Oh, I don't believe it is in this case, Your Honor. But I think the significant thing is that the manager testified that she put her key in the door and the – and started to open the door, and the district court essentially found that that – if that happened, that the entry was still valid. I thought the district court – correct me if I'm wrong, but I thought that the district court found that the semi-naked woman actually, quote, opened the door, and if there's a basis for that finding, we're kind of stuck with that and we've got to analyze it going from there. Is that correct? Well, I've looked at the – what the court said a number of times, and it's unclear because he says either it happened one way or the other. The government presented two different versions of what happened, which were totally in conflict with each other. The motel manager said she put her key in the door and then she believed that at the time she was opening the door, the person inside was opening the door at the same time. She came to that conclusion after talking with a detective and deciding that the person inside the room would have had to help because there was a lock from the inside. But at the same time, she testified she didn't know if that inside lock was engaged, so it was very possible she could have opened the door on her own. But what she was clear about is she put the key in the door and made a lot of noise with it, and it was a bit obvious to the person in the room that she was going to open the door with that key. And the district court basically said it appears that either it happened the way the motel manager described it, that she put her key in the door, Ms. Boulay, the woman in the hotel room, believed the door was going to be opened. That's what he said. She believed the door was going to be opened, jumped up to get behind the door. Well, to me, that's kind of that she would get up to get behind the door to protect herself because she believed the door was going to open and then herself open it frankly doesn't make any sense. Okay, but at the very least, it knocks out the knock and announce theory, right? No, I don't believe so, because our theory would... Based on what you've just described, no knock and no announce? I don't understand that. It wipes out the knock and announce theory. Aren't you arguing there was a violation of the knock and announce rule? Okay. If the door was opened either by the manager or by the occupant, there is no issue, is there? At least as to knock and announce. No, I believe there is, because I believe the manager opened the door at the behest of the police. Well, but then if there's either a knock and the door opens, and that's okay, so no knock and announce problem. That's one scenario. If it's voluntarily, if the woman inside the room voluntarily... Well, if they knock on the door and then open it, that's they haven't violated their knock and announce. Or if can't they use the manager as a foil, so to speak, isn't that legal? No, not if the manager is entering the room illegally, which she did, which she would be doing if she used a key and opened the room. They can't piggyback on an illegal act by a citizen. Why is it illegal if the manager, when she's informed that the renter of the room is using a phone name, why can't she go in and... She cannot. She cannot enter the room. She would be a trespasser under Washington law to enter the room at that point. The person inside the room is a renter. She can certainly knock and she can announce who she is and ask to be allowed in. So the person inside the room... If she knocks and is allowed in, she has a reasonable basis under Washington real estate law to examine and investigate the identity of the tenant. Correct. If she's allowed in. Okay. But our point is once she puts her key in the door, and she testifies to this, she made it very clear to the person inside she was going to open that door. There can be nothing... But she didn't open the door. I mean, I guess that's the point is that we don't know why Ms. Pillay decided to open the door, but there's jiggling on the door and she opens the door. And so... Well, the district court found that she believed the door was going to be open. So once there's a clear indication that the door is going to be open and she believes that, and he didn't say it was unreasonable for her to believe that, it cannot be voluntary now, even if she does in some way assist in opening the door, because she believes it's going to be open without her consent anyway. And that's beside the fact that it makes no sense that a naked woman would open the door by her, completely voluntarily at 5 o'clock in the morning. But even if you accept what the district court said he found, that she believed the door was going to be open whether she did anything or not, then got behind the door and then opened it to try to cover herself. It's not voluntary at that point. It can't be voluntary because she believes the door is going to open whether she does anything or not. Now, if you take the officer's version of the events, which is totally contradicted what the hotel manager said, they have the hotel manager knock for them. It's very clear they are using her to try to get access to this room. Then they tell her to step aside. According to their testimony, Ms. Boulay opens the door. What the officer then says at that point is, step out. Step to the front. Those were his words. Step to the front. In other words, step out in front of the door and stand right here in the threshold where I can see you. Well, she's already told him she's naked, but he tells her to do that anyway. And she does. She complies. He said she did what he told her to do. At that point, he can arrest her right there. There's nothing that stops him from arresting her. She's complied with his demands. She's voluntarily opened the door under his version of the events. There's no need for any officer to enter that room to effect the arrest. So at that point, to go into the room is to exceed the scope of what the permissible conduct under an arrest warrant. But surely you have to give her the chance to get clothed. You're not going to arrest a naked woman and carry her back out into the hall without entering the room. That doesn't seem to make a lot of sense. Well, I think the officers have a choice. At that point, they could say, you can go grab something to put on, but you have to stay where we can see you. Or they can arrest her as she is. They're the ones who chose to go knock on the door at 5 in the morning when you would expect someone to be asleep, when you expect them to be either naked or only partially dressed. They testified that she came in. Well, maybe I misunderstood, but what the officer is testifying to is he said, asked how open is the door. Well, it's about halfway, like 45 degrees. How did she appear? Well, he told her she had some warrants. I told her to, she informed me she didn't have clothes. I told her to move to the bed, but standing in the doorway is not a safe option. So she, was she standing there nude or how was she standing? She was behind the door. Then she moved to the bed and I entered. No, that's not correct. It might not be correct, but that's what they testified. No, no, I'm sorry. That's not correct. That is the testimony. So why is that? The officer actually testified and it's cited in my brief. Well, I'm reading from the excerpt of records provided here. This is page 7 and 8 of Edwards' testimony. I don't know if it's correct or incorrect. It's just what he said. Okay. Well, he also testified that when she first opened the door, he told her to move to the front so he could see her, to move out from behind the door. He didn't tell her immediately to go back into the room. He first told her basically to present herself in the threshold of the doorway. She did that. She complied with that demand. Counsel, you're down about a minute. Okay. You may reserve or abuse. Either way. I will reserve at this point so I can argue the other issue. Thank you. Counsel, you may proceed. May it please the Court. My name is Tom Rice. I'm an assistant United States attorney from Spokane, Washington. With the Court's permission, I'd like to reserve one minute for rebuttal on the cross appeal, the government's cross appeal. I think you might as well just cover it in your ten minutes at this point. Thank you, Your Honor. The first issue raised in the appeal by the defendant is the search issue. And counsel has indicated that the test here in oral argument would be that whether or not Ms. Boulay had voluntarily opened the door, whether her state of mind had some relevance to this. That is not the test. As the facts show in this case, the officers went to the hotel manager or motel manager and indicated that they had some suspicions with this room 12. She indicated she would go up there, use her master key, and open the door for the officers. They indicated do not do that, but rather knock and see if anybody comes to the door. That was the testimony. See if anybody comes to the door when you knock. And that was basically the finding by the district judge here. Those findings are not clearly erroneous. He said, in the alternative, it happened one of two ways. Either they knocked on the door and Ms. Boulay opened the door, or the key was inserted by the manager and Ms. Boulay heard the rattling and she opened the door to the rattling on the door. In either event, the district court found that the occupant of the room, Ms. Boulay, opened the door. And at that point, there is no illegality. They immediately recognized her with outstanding warrants. She indicated she wanted her clothes. The only reasonable alternative was to allow her to get the clothes, and they proceeded to allow her to do that. They didn't know this wasn't a general rummaging search. They didn't go through the hotel room looking for other items, at least initially. When they heard the rustling in the restroom for officer safety, and the testimony was for officer safety, they had to identify what that noise was. They identified that person, immediately recognized the defendant with his outstanding arrest warrants, arrested him. He then either lunged or moved toward his jacket containing the firearm, and they took that away from him. So everything progresses onward, and the search is legal in this case. The case is starkly different than the Albrechtsen case, in which the officers apparently opened the door, could have arrested an individual that was fully clothed, but decided to go into the house or the room there and do a general, as the majority found, a rummaging search and found ultimately counterfeiting material. That wasn't the purpose of entering the room in this case. It was merely to allow her to be fully clothed as she was taken to the police station. The next issue is the government's cross appeal. The cross appeal deals with the RCW dealing with attempting to elude in the state of That crime has the following elements. The elements are that there's a signal to stop by a uniformed police officer. The defendant willfully, willfully fails to stop, so he has to know that the police officer signaled him to stop. And then the defendant exhibits willful and wanton disregard for others in attempting to elude the police vehicle. It's the government's contention that the willful and wanton disregard for others' lives and property in attempting to elude the police presents a serious potential risk of physical injury to another that would qualify this as a violent crime under the armed career criminal statute provisions of Section 924. Could you be convicted under Washington law for endangering only property rather than people, the way it's worded? Counsel argues that, and I don't believe you can. I think that was illogical because you necessarily are in an automobile. It requires a vehicle. The statute requires a vehicle. It requires willful and wanton misconduct or willful and wanton disregard. It requires pursuit by a law enforcement officer. And when you combine all of those factors, while conceitedly you're going to risk damage to property, you also necessarily risk damage to a person's lives, other pedestrians. Is this ruled by Washington law, or can we look to sort of general characteristics such as a car chase in general as being always a crime? Putting human lives at risk. What's our test in this analysis? Well, the test is a categorical approach initially with respect to the statute. I mean, is it the Washington statute we have to look at, or are you talking? Yes. You have to look at the statute of conviction, the Washington statute, as opposed to other statutes.  Well, that's my point. Can we look at that? For example, can we look at the Fourth Circuit, the Sixth Circuit, the Seventh Circuit, all of them that have made interpretations, presumably under local state laws, but are they of any relevance here or not? Well, they're helpful in the analysis, but ultimately it comes down to the actual elements of the Washington statute, the alluding statute. And I want to note two things here. Let me just ask you this. I guess I'm having some trouble. It says that if you don't stop right away, and then you drive your vehicle in a manner that is either it's a willful disregard for lives or property. So under the categorical approach, this is like those drug cases, remember, where, you know, it can include lots of drugs and not just, you know, the certain Class C drugs. Doesn't it say that you can be convicted of this even if you didn't endanger any person? I hate using this word, an argument, but a technical reading of it could. Right. But once you read the entire statute. Aren't we supposed to have a technical reading of it under the categorical approach? We're not supposed to read things into it. No, once you consider the other elements. I agree the word property is there. But once you consider the other elements, you cannot have willful and wanton disregard while being pursued by a police officer in a vehicle chase. It necessarily encompasses risk to a person's lives. So even if the officer is following you and you're not exceeding the speed limit, that is a risk to people's lives. No, no. It requires willful and wanton disregard. And that's been interpreted as reckless conduct. And the police guy is going, meh. And you say, mmm. Because what you know is that after you turn a certain place, maybe you can sneak into a garage, although maybe you end up running into the garage and hurting the building. But you're not going to do anything. You don't necessarily, in refusing to stop, endanger someone. Because if I take your point, I would need to read the statute as a whole, and I agree with you. But I would need to read it as any time you elude a police officer, even if you do it driving 25 miles an hour in a 25-mile zone, that that's a willful disregard and possible risk to human life. No, Your Honor. Okay. And the reason is that willful and wanton conduct has been interpreted to be reckless conduct. We do not have obeying the traffic laws. We do not have obeying the speed limits. We don't even have negligent conduct. We have reckless conduct, willful and wanton risk to lives and property. So it isn't just willfulness in disregarding the police officer. It isn't the slow-speed chase. It is reckless conduct driving the vehicle. And that is set forth in the elements of the statute in the State of Washington. Well, but you can have that reckless conduct. It has to be with respect to disregard for lives or property, not just in general. I mean, I'm just reading the statute. So what I'm trying to understand, you're saying, well, you have to have willful and wanton conduct. I agree. But that modifies lives or property. So point me to where in the statute I can kind of just have willful and wanton misconduct that would kind of erase the and-or situation. Well, the ‑‑ I would go back to the Washington case law, U.S. v. Treat, cited in the government's brief, to the elements of this statute, which has been interpreted as exhibits willful and wanton disregard for others in attempting to elude the police. And necessarily, it is not negligence. It is not obeying the laws. It's recklessness. Thank you, counsel. Your time has expired. Mr. Wall, you have a few ‑‑ oh, you've got 53 seconds. Very quickly on the analogy to Albregtson. This case is very much like Albregtson. The district court made no findings about the officer's purpose in going to the room. And so that's really not an issue here. The issue is whether or not they had a right to go into the room under those circumstances. With regard to the ACCA issue, the key is what you can be convicted of based upon the elements in the statute. That's strictly the elements of the statute. Nothing else was presented here but the fact of conviction. You can bet that in State court, prosecutors will stand in front of a jury and say, we don't have to prove that anybody was endangered by anything here, only that there was some risk of damage to property by willful or wanton conduct. That's all we have to prove. But his response to that is that the Washington courts have interpreted this statute as wanton disregard to others, which then would track the Federal statute. I believe what he's saying is they've interpreted willful and wanton as meaning reckless conduct. But recklessness is simply a state of mind. To be qualified as a violent felony, it has to involve substantial risk of danger to a physical injury to persons. And if you can be convicted based upon only recklessness with regard to property, which the statute clearly allows, then it doesn't qualify. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision. And we will hear argument in the United States.
judges: O'scannlain, McKeown, Bea